# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02622-NYW

ALLISON PAPESH,

 Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

 Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

 This civil action arises under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401–33, for review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Allison Papesh's ("Plaintiff" or "Ms. Papesh") application for Disability Insurance Benefits ("DIB"). Pursuant to the Parties' consent [#13], this civil action was referred to this Magistrate Judge for a decision on the merits. *See* [#21]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, I respectfully **AFFIRM** the Commissioner's decision.

## BACKGROUND

 This case arises from Plaintiff's application for DIB filed on or about August 10, 2015. [#11-2 at 11;[1] #11-3 at 58, 59]. Ms. Papesh graduated from high school, completed two years

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the CM/ECF system but the page number associated with the Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

of college, and worked as a restaurant and cocktail server, a bartender, a receptionist, a sales representative, a cheese supervisor, and a customer service representative. *See* [#11-2 at 35–36; #11-9 at 206]. Plaintiff alleges she became disabled on January 1, 2014, later amended to March 15, 2015, *see* [#11-2 at 33; #11-9 at 201], due to Interstitial Cystitis ("IC")[2] and major anxiety disorder, *see* [#11-9 at 205]. Ms. Papesh was twenty-nine years old at the date of onset of her claimed disability.

The Social Security Administration denied Plaintiff's application administratively on or about January 5, 2016. *See* [#11-3 at 58; #11-4 at 73–75]. Ms. Papesh filed a request for a hearing before an Administrative Law Judge ("ALJ"), *see* [#11-4 at 79], as well as a request for a determination on the record, *see* [#11-5; #11-6]. ALJ Jennifer B. Millington (the "ALJ") convened a hearing on June 5, 2017, at which attorney William Allison represented Plaintiff, and the ALJ received testimony from the Plaintiff and Vocational Expert Martin Rauer (the "VE"). *See* [#11-2 at 11].

At the hearing, Plaintiff testified that her IC kept her from working at present. [#11-2 at 36, 42–44]. She attested that she was diagnosed with the disease at four years old, but without much knowledge of the disease or health insurance for much of her twenties, her IC has "spawned into a lot of different ailments and turned into debilitating pain." [*Id.* at 36–37, 44]. Ms. Papesh explained that she received treatments 3 days per week for her IC, and that her last employer could not accommodate that amount of time off each week. [*Id.* at 37]. She continued that she began administering the treatment (bladder catheterizations) at home, and had done so

---

[2] IC is a "chronic inflammatory condition of unknown etiology involving the epithelium and muscularis of the bladder, resulting in reduced bladder capacity, pain relieved by voiding, and severe bladder irritative symptoms." It is also known as Hunner ulcer. *See* 225430 interstitial cystitis, Stedmans Medical Dictionary 225430.

for roughly a year. [*Id.* at 37–38]. But she testified that even home administration could take approximately 3 hours, given its difficulty and that she must lie down afterwards for 45 minutes. [*Id.* at 38].

Regarding her additional physical ailments, Ms. Papesh testified to "full body pain everywhere" due to her fibromyalgia, and that her IC causes her to experience frequent urination—up to 3 to 4 times per hour and as many as 16 times throughout the night. [*Id.* at 38–39]. This in turn causes sleep disturbance, requiring Ms. Papesh to lie down nearly every day to catch up on sleep. [*Id.* at 39, 44–45]. Ms. Papesh continued that her chronic fatigue makes routine hygienic tasks more difficult and longer to complete; that she can drive only short distances; that her medication causes side effects of chronic nauseous and frequent vomiting and diarrhea; and that walking, going to the grocery store, sitting, and standing exacerbate her diffuse body pain. [*Id.* at 40, 45–47]. As to her mental impairments, Plaintiff testified to having problems with depression because she can no longer work and has difficulty maintaining a social life, this in addition to issues with anxiety because she fears that she may visit a place with no restrooms. [*Id.* at 41].

The VE also testified at the hearing. The VE first summarized Ms. Papesh's relevant past work experience to include: a hostess, specific vocational preparation ("SVP") level 3, light exertion; a waitress, SVP level 3, light exertion; a front desk clerk, SVP level 4, light exertion; receptionist, SVP level 4, sedentary exertion but light as described by Plaintiff; a bartender, SVP level 3, light exertion; a check room attendant, SVP level 2, light exertion; a cashier II, SVP level 2, light exertion but medium as described by Plaintiff; and a cocktail waitress, SVP level 3, light exertion. *See* [#11-2 at 53–54].

The VE then considered the work an individual could perform with varying degrees of restrictions. First, the VE testified that an individual who could perform medium exertion work, could only frequently climb, balance, stoop, kneel, crouch, and crawl, and could not be exposed to heights or heavy machinery could perform all of Ms. Papesh's past relevant work. [*Id.* at 54–55]. Second, if this same individual was limited to light exertion work, the VE testified that such an individual could perform work as a small product assembler, a cafeteria attendant, and as a toll collector—each a SVP level 2. [*Id.* at 55]. Third, if this same individual "needed, in addition to regular breaks, two additional breaks per hour of three to four minutes," the VE testified, "you're fairly close to a window of opportunity with most employment situations in the unskilled arena. Three minutes is right at the window. Four minutes twice per hour would be excessive and would not be consistent with competitive employment at the unskilled level, in my opinion." [*Id.* at 56]. Finally, when asked by Ms. Papesh's attorney if that same individual also had to miss "more than two days per month on average," the VE testified that such an individual would not be employable. [*Id.*].

On June 30, 2017, the ALJ issued a decision finding Ms. Papesh not disabled under the Act. [#11-2 at 21]. Plaintiff requested Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. [*Id.* at 1–3]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on November 1, 2017, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *cf. Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence justifying the ALJ's decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). But "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court may not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

**ANALYSIS**

**I.    The ALJ's Decision**

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002).  Additionally, the claimant must prove she was disabled prior to her date last insured.  *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Williams*, 844 F.2d at 750.  Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied.  *Id.*  Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations.  *Id.*; *see also* 20 C.F.R. § 404.1520(e).  If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decisionmaker proceeds to step three.  *Williams*, 844 F.2d at 750.  Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d).  *Id.*  At step four of the evaluation process the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines the maximum amount of work the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work

capability." *Williams*, 844 F.2d at 751; *see also id.* at 751–52 (explaining the decisionmaker must consider both the claimant's exertional and nonexertional limitations). The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120. The Commissioner can meet her burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99, 1101 (9th Cir. 1999).

The ALJ found that Ms. Papesh met the insured status requirements for DIB through December 31, 2020, and had not engaged in substantial gainful activity since March 23, 2015. [#11-2 at 13]. At step two the ALJ determined that Ms. Papesh's IC was a severe impairment. [*Id.* at 13–15]. At step three the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). [*Id.* at 16]. The ALJ then determined that Plaintiff had the RFC to perform light exertion work subject to several limitations, including "two extra breaks per hour for 3 minutes at a time" [*id.*], and concluded at step four that Ms. Papesh could not perform any of her past relevant work "due to her need for extra breaks," [*id.* at 19]. At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there

are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [*Id.*].

Ms. Papesh now appeals the ALJ's decision to this court. While identifying only two issues in her opening brief—that the ALJ's findings are internally inconsistent and contrary to the evidence and the ALJ's findings that fibromyalgia and depression are not medically determinable impairments is not supported by substantial evidence, *see* [#15 at 4]—her opening and reply brief suggest a myriad of different objections, many of which seem to confuse the law governing the ALJ's decision and are not clearly or fully articulated. Indeed, the Commissioner's response brief identifies five issues raised by Plaintiff's opening brief. *See* [#17 at 7]. As far as the court can discern, Plaintiff challenges the ALJ's findings at: (1) step two because the ALJ erred in finding that Plaintiff's fibromyalgia and depression were not medically determinable and/or non-severe impairments; (2) step three because the ALJ erred in concluding that Plaintiff's IC did not meet the Listing associated with this ailment; (3) the RFC determination because the ALJ did not account for limitations caused by Plaintiff's fibromyalgia and improperly assessed Plaintiff's subjective complaints of disabling pain; and (4) step five because the ALJ did not explain how Plaintiff's restroom breaks precluded her from performing her past relevant work but did not preclude her from performing jobs as a small product assembler, cafeteria attendant, or toll collector. *See* [#15; #17]. To the extent Plaintiff intended to raise challenges not identified above, she has not sufficiently developed such issues for review by this court and has waived them. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.");

*United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) (explaining that it is not the court's role to craft arguments for litigants, especially when represented by able counsel).

With this understanding in mind, I consider Plaintiff's challenges to the ALJ's decision in turn. And while Plaintiff does not raise these issues in the order identified by the court, the following discussion addresses each issue in order of the five-step sequential process for clarity purposes.

## II.    Step Two

At step two the Commissioner determines whether a claimant has any severe physical or mental impairments. *See Williams*, 844 F.2d at 750. "To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751). But "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Indeed, an ALJ may conclude that an ailment is not a medically determinable impairment—a particularly important finding, as the ALJ must consider only *medically determinable impairments* (severe or not) at subsequent steps. *See Cook v. Colvin*, No. CV 15-1164-JWL, 2016 WL 1312520, at *4 (D. Kan. Apr. 4, 2016) ("Limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, whereas alleged limitations attributable to impairments which are not medically determinable must not be considered at later steps.").

Ms. Papesh appears to take issue with the ALJ's conclusion that her fibromyalgia and depression were not medically determinable impairments. [#11 at 11-15]. But this is not an accurate characterization of the ALJ's findings at step two. Rather, the ALJ concluded that

Plaintiff's fibromyalgia and depression were *non-severe* medically determinable impairments.[3] *See* [#11-2 at 13–14]. And while Plaintiff may be correct that both have more than a minimal effect on her ability to perform work activities, I agree with the Commissioner that any error by the ALJ in finding otherwise was harmless.

In *Allman v. Colvin*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") explained that at step two "a claimant need only establish, and an ALJ need only find, one severe impairment[,]" as a finding of one severe impairment requires the ALJ to proceed to the next step considering *all* of the claimant's ailments (severe or not) anew. 813 F.3d 1326, 1330 (10th Cir. 2016). "Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe." *Id.*; *see also Smith v. Colvin*, 821 F.3d 1264, 1266–67 (10th Cir. 2016) (holding as harmless error the ALJ's failure to find a severe left shoulder impairment at step two when the ALJ considered shoulder impairments in assessing the plaintiff's RFC); *Howard v. Berryhill*, No. 17-CV-00276-RBJ, 2017 WL 5507961, at *4 (D. Colo. Nov. 17, 2017) ("While it certainly would have been prudent for the ALJ to consider Ms. Howard's chronic pain syndrome diagnosis at step two . . . the ALJ's failure to do so is not reversible error under *Allman* because she determined that two of Ms. Howard's other impairments were severe."). Here the ALJ found at least one severe impairment, Plaintiff's IC, and "proceeded with the analysis as required." *Troe v. Berryhill*, No. 16-CV-02794-MEH, 2017 WL 2333101, at *7 (D. Colo. May 30, 2017) (relying on *Allman*, 813 F.3d at 1330). Thus, the ALJ did not err at step two by failing to find as severe impairments Plaintiff's fibromyalgia and depression.

---

[3] The ALJ properly considered Plaintiff's fibromyalgia under Social Security Ruling 12-2p, 2012 WL 3104869, at *2–3 (July 25, 2012) in reaching this conclusion. *See* [#11-2 at 13–14].

### III.    Step Three

Step three of the evaluation process requires the ALJ to consider whether a claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  The severity of the impairments found in these listings precludes any substantial gainful activity.  *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Williams*, 844 F.2d at 751.  Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing[,]" and a claimant meets a listed impairment if her ailments satisfy all of the listing's criteria, 20 C.F.R. § 404.1525 (c)(3), or medically equal a listing, *id.* at § 404.1526(a) (medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment").  The claimant's meeting or medically equaling a listing requires a conclusion of disabled and entitles the claimant to benefits.  *See Davidson v. Sec'y of Health & Human Servs.*, 912 F.2d 1246, 1252 (10th Cir. 1990).

Here Ms. Papesh contends that she meets the requirements of SSR 15-1p, which "provides guidance on how [the Social Security Administration] develop[s] evidence to establish that a person has a *medically determinable impairment* of [IC]," SSR 15-1p, 2017 WL 1292257, at *1 (Mar. 18, 2015) (emphasis added), "and therefore should be found to be disabled." [#15 at 13].  But as the italicized language notes, SSR 15-1p provides guidance only on whether IC is a medically determinable impairment.  It does not set forth criteria utilized at step three to determine whether a claimant meets or medically equals a Listing.  *E.g.*, SSR 15-1p, 2017 WL 1292257, at *3 (Mar. 18, 2015) ("IC constitutes an *MDI* when producing appropriate symptoms and medical signs or laboratory findings" (emphasis added)).  Indeed, the Listings do not provide for IC, but the ALJ concluded that Plaintiff's IC did not meet or

medically equal the criteria for Listing 6.01, *Genitourinary disorders* that result in chronic kidney disease. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 6.00. But Ms. Papesh does not explicitly challenge this conclusion on appeal (indeed, there is no mention of it in her briefing at all), and the court will not reconsider the ALJ's conclusion in this regard without such a challenge.

This same conclusion applies equally to any intimation that SSR 12-2p provides criteria for a finding of *disability* due to meeting or medially equaling a Listing of fibromyalgia. Thus, I find no error at step three.

## IV. The RFC

In assessing a claimant's RFC, the ALJ must consider the combined effect of all medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); 20 C.F.R. § 404.1529(a); SSR 96-9p. A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. The ALJ's RFC assessment must be consistent with the whole record and supported by substantial evidence. *See generally Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); SSR 96-8p. If it is, the court will not reverse the ALJ's decision even if it could have reached a different conclusion. *Ellison*, 929 F.2d at 536; *see also Flaherty*, 515 F.3d at 1070 (explaining that the reviewing court may not "reweigh or retry the case.").

Plaintiff contends that the ALJ's RFC determination is internally inconsistent with the medical record because the ALJ improperly evaluated Plaintiff's subjective complaints of pain[4]

---

[4] Though SSR 16-3p superseded SSR 96-7p and eliminated the term "credibility", SSR 16-3p offers the same guidelines for ALJs to use in assessing a claimant's subjective complaints of symptoms and pain. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). For this reason, the court will refer to this challenge as one speaking to Ms. Papesh's credibility. *See Watts v. Berryhill*, 705 F. App'x 759, 763 n.4 (10th Cir. 2017).

and did not consider the limitations associated with Plaintiff's fibromyalgia. I consider each objection in turn.

### A.    Credibility

"'Credibility determinations are peculiarly the province of the finder of fact' and the [court] will uphold such determinations, so long as they are supported by substantial evidence." *Ruh v. Colvin*, No. 13-CV-01255-PAB, 2015 WL 1517392, at *2 (D. Colo. Mar. 30, 2015) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). "Credibility determinations should not be conclusory, but instead 'closely and affirmatively linked' to evidence in the record." *Oliva v. Colvin*, No. 13-CV-02495-PAB, 2015 WL 5719645, at *7 (D. Colo. Sept. 30, 2015) (quoting *Kepler*, 68 F.3d at 391)). In addition to considering the objective medical evidence, the ALJ must also consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of her pain; aggravating and mitigating factors; any medication taken and its effectiveness in providing relief; other treatment received aside from medications; other measures utilized to alleviate pain, *i.e.*, lying down; and any other factors that may bear on the claimant's functional limitations. *See* 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).

The ALJ's RFC determination starts with a conclusion that while Ms. Papesh's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms," her allegations concerning the severity and limiting effects were "not entirely consistent with the medical evidence and other evidence in the record[.]" [#11-2 at 16]. Ms. Papesh takes issue with 5 findings the ALJ relied on in reaching this conclusion. *See* [#15 at 7]. I consider each below, and I respectfully agree with the Commissioner that the ALJ properly

evaluated Ms. Papesh's credibility based on the medical evidence and that the ALJ appropriately resolved any inconsistencies within the record.

First, Ms. Papesh challenges the ALJ's finding that "[t]here are few complaints of severe pain, catheter use, medication side effects, and an inability to get out of bed. Medical exams revealed no significant abnormalities." [#11-2 at 17]. Ms. Papesh argues that there "were at least 19 complaints of pain documented in the medical evidence of record between September 12, 2014 and January 11, 2017[,]" and that at least two medically determinable "are known to cause the type, frequency and degree of pain reported by Ms. Papesh." [#15 at 8 (citing [#11-6 at 129])]. Ms. Papesh is correct that the record contains several instances where she reported pain. *See, e.g.*, [#11-12 at 346, 361, 368, 370, 374, 377, 378, 379, 381; #11-13 at 437, 441, 474; #11-15 at 511, 512, 535; #11-16 at 580, 582, 583; #11-17 at 646, 654]. But the ALJ found that Ms. Papesh's medical exams "revealed no significant abnormalities" [#11-2 at 17], and then went on to explain the inconsistencies with Ms. Papesh's allegations of disabling pain and the objective medical record, *see* [*id.* at 17–18]. This court's review of the record supports the ALJ's conclusion in this regard, because objective medical findings were largely normal and Ms. Papesh reported improvement of her symptoms following several procedures. *See, e.g.*, [#11-11 at 320–22, 327–29, 331–33, 335–36; #11-12 at 337, 346–49, 366–67, 368, 370–72, 375, 377, 380, 382, 421, 423; #11-13 at 445, 465–66, 470; #11-14 at 506, 508; #11-15 at 513–14, 516, 524, 560; #11-16 at 584, 588, 593, 621, 626; #11-17 at 647–48, 657–58; #11-19]. While an ALJ may not pick and choose evidence that supports a finding of nondisability, she "is entitled to resolve any conflicts in the record[.]" *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). That is what the ALJ did here. Thus, the ALJ affirmatively linked her determination

to substantial evidence and the court will not upset that determination. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Second and third, Ms. Papesh argues that it was error for the ALJ to discredit Plaintiff's subjective complaints of pain because "[Plaintiff] worked from May 2010 to March 2015 as a receptionist at a medical marijuana dispensary and from November 2013 to May 2015 as a restaurant server, both without any accommodations" and "earned [substantial gainful activity] wages in the first quarter of 2015." [#15 at 8]. Ms. Papesh argues that because her date of alleged onset was March 23, 2015, "the only thing that finding says is that [Plaintiff] worked and had earnings until she became disabled." [*Id.*]. But these were only two of several reasons the ALJ found Ms. Papesh's allegations not entirely credible, and the ALJ continued with a detailed account of the inconsistencies with the objective medical record. [#11-2 at 17–19]. I find no error with the ALJ's reasoning, as she "set forth the specific evidence [she] relie[d] on in evaluating the claimant's credibility," including the repeated medical assessments that Plaintiff's physical and mental exams were "unremarkable" [*id.* at 18] as well as Plaintiff's inconsistent reports of anxiety based on the lack of intimacy in contrast to reports of a long-term boyfriend and early pregnancy [*id.* at 18–19]. Indeed, the ALJ was not required to make a "formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (internal quotation marks omitted) (noting that "common sense, not technical perfection, is our guide.").

Fourth, Ms. Papesh challenges the ALJ's finding that "[Plaintiff] underwent an in-patient catheter procedure in January 2016, and reported she tried the catheter procedure once at home and found it too difficult, which is inconsistent with her testimony of consistent catheter use and frequent in-home catheter procedures." [#11-2 at 18]. Ms. Papesh contends that while

she did inform her doctor that home-catheterization was too difficult, the ALJ "ignored other evidence that Ms. Papesh later in 2016 . . . was given take-home instructions" for home-catheterization and bladder installations. *See* [#15 at 8–9]. But the evidence Ms. Papesh cites for this proposition does not suggest that she received these "take-home instructions" in late 2016; rather, it appears that her doctor printed these instructions on or about August 20, 2015, *see* [#11-6 at 125; #11-18 at 702]. This being *before* she told her doctor on January 21, 2016 that she tried bladder installation at home once, but "fe[lt] this is too difficult to manage." [#11-13 at 437]. Plaintiff points to no additional medical evidence that corroborates her testimony regarding at-home bladder installations on a constant basis. If Ms. Papesh believed this to be a crucial issue for the ALJ's consideration, then it was her responsibility to develop this issue more fully. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("[I]n cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." (internal quotations omitted)). Accordingly, I find no error with the ALJ's conclusion here.

Fifth, Ms. Papesh argues that the ALJ erred in relying on the fact that "[Plaintiff] received unemployment benefits in the 2nd and 3rd quarters of 2015, which indicates she was ready, willing, and able to work." [#11-2 at 17]. Though acknowledging that the ALJ was "completely within . . . her rights to consider the receipt of unemployment insurance as a factor militating against a finding of disability[,]" Plaintiff contends that this factor alone cannot support an adverse credibility determination. [#15 at 9; #18 at 3–4]. Further, because the ALJ

did not inquire about Plaintiff's receipt of unemployment benefits at the hearing, the ALJ had a duty to develop the record on this point before relying on it in her RFC determination. [#15 at 9; #18 at 3–4]. But as previously discussed, the ALJ's consideration of Ms. Papesh's receipt of unemployment benefits was one of several factors the ALJ considered in assessing Plaintiff's credibility; it was not the sole factor. *See Lately v. Colvin*, 560 F. App'x 751, 735 (10th Cir. 2014) (finding no error where the ALJ discredited the plaintiff's subjective complaints of pain because the ALJ "cited and discussed testimony and her activities of daily living, child-care responsibilities, diagnostic exams, treatment-seeking behavior, medications, her failure to fully participate in physical and occupational therapy, her consistent work history, *and* her collection of unemployment benefits, which required her to attest that she was ready, willing, and able to work." (emphasis added)). Nor does the court agree that the ALJ had a duty to develop the record further on this point—the record contained evidence of Ms. Papesh's receipt of unemployment benefits and it is unclear what else the ALJ needed to develop. *Cf. Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation.").

**B.  Plaintiff's Fibromyalgia**

Ms. Papesh also appears to challenge the ALJ's RFC determination because the ALJ failed to consider how Plaintiff's fibromyalgia in combination with her other ailments "limits her daily activity." [#15 at 15]. As explained, the ALJ must consider all medically determinable impairments, whether severe or not, when assessing a claimant's RFC. *See Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). "'The RFC assessment must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7). "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

The ALJ considered Plaintiff's fibromyalgia at step two and concluded that fibromyalgia was not a severe medically determinable impairment. *See* [#11-2 at 13–14]. While the ALJ did not again mention fibromyalgia by name when considering Ms. Papesh's RFC, the ALJ did consider Ms. Papesh's complaints of diffuse body pain. *See* [*id.* at 16–19]. Further, I find harmless any error in not explicitly mentioning Ms. Papesh's fibromyalgia in the RFC determination. *Cf. Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (approving harmless-error analysis when "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."). And it does not appear that the ALJ impermissibly relied on her step two finding in lieu of an independent RFC determination regarding Plaintiff's fibromyalgia. *See Berg v. Berryhill*, No. 16-cv-02718-NYW, 2018 WL 276280, at *8 (D. Colo. Jan. 3, 2018) ("[I]t appears that the ALJ merely relied on her findings at Step two and, thus, did not consider Plaintiff's migraines at subsequent steps. This constitutes reversible error.").

The record before the court contains sparse mention of Ms. Papesh's fibromyalgia. For instance, February 3, 2016 medical records noted a diagnosis of fibromyalgia, among other ailments, and an examination revealed 9 positive tender points out of 18. *See* [#11-13 at 441,

444, 446]. Medical records from April 1, 2016 and May 2, 2016 then list fibromyalgia as one of several diagnoses but do not expound on fibromyalgia further, and the reason for each visit concerned Ms. Papesh's IC and bladder issues. *See* [*id.* at 460, 468]. The only other mentions of fibromyalgia similarly listed fibromyalgia as one of several diagnoses, *e.g.*, [#11-5 at 555, 561, 559], but concerned Ms. Papesh's expressed frustrations with the lack of treatment provided for her fibromyalgia, *e.g.*, [*id.* at 559 (stating that her primary care physician "has never done anything for her fibromyalgia."), 561 (noting Plaintiff failed to follow up with prescribed physical therapy for her fibromyalgia)]. In addition, Plaintiff's argument that IC is often associated with fibromyalgia, without more, does not establish its severity or impact on an individual's functioning. [#15 at 11]. And as discussed, though Ms. Papesh testified to severe limitations caused by her fibromyalgia, the court finds no error in the ALJ's assessment of Ms. Papesh's subjective complaints regarding the intensity and limiting effects of her diffuse pain body. Accordingly, the ALJ did not err in assessing the limitations caused by Plaintiff's fibromyalgia when determining Ms. Papesh's RFC.

## C. Plaintiff's Psychological Functioning

Ms. Papesh further suggests that the ALJ failed to properly account for her psychological functioning. [#15 at 15–16]. To the extent that Ms. Papesh contends that the ALJ failed to properly account for her psychological limitations in her RFC (apart from her contention that the ALJ erred when she did not conclude that her depression and anxiety constituted a medically determinable impairment), Ms. Papesh has failed to develop that argument or suggest any specific limitations that were not reflected in the RFC. [*Id.*]. In addition, the ALJ explained that the evidence upon which Ms. Papesh relies to establish her psychological duress, *i.e.*, her worry that she will never be in a relationship, cannot have

children, and was overwhelmed by the pain, was mitigated by objective medical evidence to the contrary.

## V.    Step Five

At step five of the sequential analysis "the burden of proof shifts to the Commissioner . . . to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Hackett*, 395 F.3d at 1171; 20 C.F.R. § 404.1520(a)(4)(v).  This also requires the ALJ to consider any exertional and nonexertional limitations that may impede the claimant's ability to perform the identified work as well as any impacts those limits have on the number of jobs available in the national economy that the claimant is functionally capable of performing.  SSR 83-14, 1983 WL 31254 (Jan. 1, 1983). The ALJ concluded Ms. Papesh could perform the unskilled light exertion jobs of small products assembler, cafeteria attendant, and toll collector.  *See* [#11-2 at 20].

Ms. Papesh takes issue with the ALJ's finding that Ms. Papesh would only need two additional breaks per hour for 3 minutes at a time when the VE testified that 3 minutes is "right at the window" for unskilled work, but that "[f]our minutes twice per hour would be excessive and would not be consistent with competitive employment at the unskilled level[.]"  [#11-2 at 56].  Plaintiff asserts that the VE's testimony was ambiguous and that the ALJ needed to explain why she concluded that Plaintiff would need only 3-minute breaks as opposed to 4-minute breaks.  [#15 at 5].  Ms. Papesh analogizes this to the situation in *Kelly v. Berryhill*, No. 17-1002-EFM, 2017 WL 6557422, at *3–4 (D. Kan. Dec. 22, 2017).  But in *Kelly* the court remanded to the ALJ because the ALJ did not explain why she did not adopt a medical source's limitation of extra breaks due to IC despite affording great weight to that medical source's opinion.  *Id.*  The court in *Kelly* further explained that it was unclear whether the ALJ's

conclusion that the plaintiff needed reasonable access to a restroom incorporated the medical source's extra breaks limitation. *Id.* Here the ALJ did not disregard any medical opinion that Plaintiff's additional breaks needed to be 4-minutes as opposed to 3-minutes. Nor is there any evidence in the record to suggest this. *Cf. Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (noting that an ALJ must "include all (and only) those impairments borne out by the evidentiary record" when posing hypotheticals to VEs).

In addition, Plaintiff's counsel did not explore this hypothetical further at the hearing; instead asking whether an individual would be employable if missing more than 2 days per month on average. *See* [#11-2 at 56–57]. As mentioned, the ALJ may generally "rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Branum*, 385 F.3d at 1271. Further, ALJs are not required to "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

Next, Ms. Papesh argues that the ALJ erred by failing to explain why these two additional 3-minute breaks precluded Ms. Papesh from performing her past relevant work but not the unskilled jobs identified by the VE and by failing to account for the erosion of the job market for these jobs based on the two additional breaks. *See* [#15 at 6; #18 at 4]. When an ALJ relies on "expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT]." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 2005); SSR 00-4p. It is the ALJ's responsibility to "elicit a reasonable explanation for any discrepancy on this point." *Hackett*, 395 F.3d at 1175. In responding to

the ALJ's hypotheticals, the VE testified that he would apprise the ALJ of any inconsistencies between his testimony and the Dictionary of Occupational Titles—the VE did not testify to any inconsistencies or any erosion in the job market due to these additional breaks. *See* [#11-2 at 53–57]. And as discussed, the court has rejected Plaintiff's challenges to the ALJ's RFC determination and, thus, the VE's answer that an individual could perform the three unskilled jobs identified even when taking two additional 3-minute breaks "provided a proper basis for the ALJ's disability decision." *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000). This is so even though the ALJ found these additional breaks to preclude Plaintiff's past relevant work. Accordingly, I find no error at step five.

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.


DATED: October 22, 2018                    BY THE COURT:

                                           Nina Y. Wang
                                           United States Magistrate Judge